## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF FLORIDA
## PENSACOLA DIVISION

ALLEN DALE OWENS,

     Plaintiff,

vs.                          CASE NO.:  3:18-CV-2121-RV-HTC

ALECIA K. ENFINGER,

     Defendant.

_____ /

## DEFNDANT ALECIA K. ENFINGER'S MOTION TO DISMISS

Defendant, Alecia K.  Enfinger, in her individual capacity, by and through her undersigned attorneys, hereby moves to dismiss Plaintiff's First Amended Complaint pursuant to Fed. R. Civ. P. 12(b)(6) and in support thereof states:

1.    Plaintiff Allen Dale Owens, a *pro se* prisoner, brings this action pursuant to the Civil Rights Act, 42 U.S.C. § 1983, for an alleged violation of his constitutional right. DE 23. Specifically, Plaintiff claims that Nurse Enfinger was deliberately indifferent to Plaintiff's serious medical needs while Plaintiff was incarcerated at Century C.I. in violation of Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment because of an alleged delay in treating his serious medical need. DE 23. Plaintiff specifically requests "compensatory and punitive damages from the named defendant." DE 23 at 10.

2.     Nurse Enfinger moves to dismiss Plaintiff's Amended Complaint for failure to state a claim upon which relief can be granted because Plaintiff failed to allege sufficient facts to show that Nurse Enfinger's alleged conduct caused a physical injury, as required under the Prison Litigation Reform Act ("PLRA"), and a constitutional deprivation.

## PLAINTIFF'S ALLEGATIONS

On the evening of Friday, November 4, 2016, while taking a shower, Plaintiff slipped and landed on his right hip. DE 23 at 6. Plaintiff's cellmates helped him up and the guard on duty notified the medial department. DE 23 at 6. Plaintiff was pushed to medical in a wheelchair and seen by three nurses: Nurse Williams, Nurse Thomas, and Nurse Enfinger. DE 23 at 6.

While Plaintiff was being examined by Nurse Enfinger, she learned that Plaintiff had slipped in the shower and his hip "was painful when she touched the area." DE 23 at 7. Plaintiff alleges that Nurse Enfinger stated that Plaintiff "was just faking [his] injury;" that she saw "nothing wrong" with Plaintiff; and that Plaintiff would not be permitted to stay in the infirmary. DE 23 at 7.

Despite an allegation that Nurse Enfinger, as the "supervisor," declared that Plaintiff "would not get any further treatment," Plaintiff "was given ibuprofen and a low bunk pass, lower tier pass, a pass for x-ray…[and] a set of crutches." DE 23 at 7.

However, Plaintiff wanted a wheelchair and to stay in the infirmary instead of returning to his dorm. DE 23 at 6-7. Plaintiff alleges that he was having difficulty using the crutches and they were causing nerve damage in his arms. DE 23 at 7-8. Plaintiff also wanted an x-ray completed immediately. DE 23 at 8.

On Saturday morning, November 5, 2016, Plaintiff was moved from G-Dorm to F-Dorm. DE 23 at 7-8. Plaintiff alleged he was still in pain, could not use the crutches, and it was painful to use the toilet and shower. DE 23 at 7-8. Absent from the Amended Complaint are any allegations that he sought sick call or medical assistance on Saturday. On Sunday morning, November 6, 2016, the guards pushed him in a wheel chair to the dining hall. DE 23 at 8. Thereafter, Plaintiff was pushed in the wheel chair to medical and he stayed in the infirmary. DE 23 at 8.

On Monday, November 7, 2016, Plaintiff went to his scheduled x-ray appointment and had x-rays completed, wherein it "was discovered that [Plaintiff] has a broke [sic] hip." DE 23 at 8. "On that same day November 7, 2016, [Plaintiff] was transported by ambulance from Century Correctional Facility to Baptist Hospital in Pensacola Florida for surgery." DE 23 at 8.

Plaintiff alleges "for three days [he] was in excruciating pain up my leg physically and experiencing psychological/emotional trauma, personal humiliation,

anxiety, stress *caused by this injury and Nurse [Enfinger's] malicious action* towards the seriousness of [his] injury." DE 23 at 8 (emphasis added).

On November 9, 2016, two days after his x-rays, Plaintiff "had a full hip replacement surgery" without any alleged issues or complications. DE 23 at 8.

## MEMORANDUM OF LAW

### I.    STANDARD OF REVIEW

Although *pro se* complaints are held to a less stringent standard than those drafted by an attorney, a plaintiff is still required to "set forth factual allegations, either direct or inferential, respecting each material element necessary to sustain recovery under some actionable legal theory." *See Wright v. Newsome,* 795 F.2d 964, 967 (11th Cir. 1986); *Worst v. Hart,* 1995 WL 431357 (N.D. Fla. 1995). It cannot be assumed that a Plaintiff will prove facts which have not been alleged. *Quality Foods de Centro America,* 711 F.2d at 995, *citing Associated General Contractors of California, Inc. v. California State Council of Carpenters,* 459 U.S. 519, 103 (1983). "Ultimately, while courts show leniency to *pro se* litigants not enjoyed by those with the benefit of a legal education, this leniency does not give a court license to serve as de facto counsel for a party, or to rewrite an otherwise deficient pleading in order to sustain an action. *Petersen v. Smith*, No. 16-15443, 2019 WL 588634, at 7 (11th Cir. Feb. 13, 2019) (*citing GJR Investments, Inc. v. Cty. of Escambia, Fla.,* 132 F.3d 1359, 1369 (11th Cir. 1998) (overruled on other

grounds by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009)). Hence, even though the pleading standard for a *pro se* complaint is quite liberal, "bald assertions and conclusions of law will not suffice." *Leeds v. Meltz,* 85 F.3d 51, 53 (2d Cir. 1996). Additionally, the court's duty to construe a plaintiff's complaint liberally is not the equivalent of a duty to rewrite it. *Peterson v. Atlanta Housing Auth.,* 998 F.2d 904, 912 (11th Cir. 1993). As stressed by the Eleventh Circuit, "the heightened pleading standard is the law of this circuit" when § 1983 claims are asserted against government officials in their individual capacities. *GJR Investments,* 132 F.3d at 1368 (overruled on other grounds by *Ashcroft v. Iqbal*, 556 U.S. 662 (2009).

## II.    PLAINTIFF'S CLAIM FOR COMPENSATORY AND PUNITIVE DAMAGES BARRED BY § 1997E(E)

Plaintiff is not entitled to compensatory or punitive damages because he failed to allege that he suffered any physical injury as a result of Nurse Enfinger's alleged conduct. Under the PLRA, "no federal civil action may be brought by a prisoner confined in a jail, prison, or other correctional facility, for mental or emotional injury suffered while in custody without a prior showing of physical injury." 42 U.S.C. § 1997e(e). In the Eleventh Circuit, compensatory and punitive damages are unavailable under § 1997e(e) absent physical injury. *Al-Amin v. Smith*, 637 F.3d 1192, 1199 (11th Cir. 2011); *Smith v. Allen*, 502 F.3d 1255, 1271 (11th Cir. 2007); *see also Harris v. Garner*, 216 F.3d 970, 984-85 (11th Cir. 2000) (the physical injury requirement applies to all federal claims, including

constitutional claims); *Slicker v. Jackson*, 215 F.3d 1225, 1229 (11th Cir. 2000); *Brooks v. Powell*, 800 F.3d 1295, 1307 (11th Cir. 2015) (under the PLRA and binding Eleventh Circuit case law, "an incarcerated plaintiff cannot recover either compensatory or punitive damages for constitutional violations unless he can demonstrate a (more than *de minimis*) physical injury").

"In order to avoid dismissal under § 1997e(e), a prisoner's claims for emotional or mental injury must be accompanied by allegations of physical injuries that are greater than *de minimis*." *Mann v. McNeil*, 360 Fed. Appx. 31, 31 (11th Cir. 2010); *Harris v. Garner*, 190 F. 3d 1279, 1286 (11th Cir. 1999) (affirming dismissal of claims for compensatory and punitive damages because the claims were unsupported by an allegation of physical injury).

Discomfort does not equate to physical injury under § 1997e(e). *Dixon v. Toole*, 225 Fed. Appx. 797, 799 (11th Cir. 2007). "Pain and suffering" do not equate to physical injury under § 1997e(e). *Jimenez v. Reeder*, No. 5:08cv345/MCR/MD, 2009 WL 700776 at 2 (N.D. Fla. Mar. 16, 2009) (allegations of "pain and suffering" were equivalent to mental and emotional injuries).

In *Stallworth*, the Eleventh Circuit held that the prisoner successfully alleged he suffered more than a *de minimis* physical injury, as required under the PLRA to recover compensatory and punitive damages, where he alleged that the prison officers' refusal to give him a clean meal tray (in retaliation for the inmate writing

6

grievances against the guards), made him very sick because the trays were not properly washed and had mildew and black mold; specifically, the prisoner alleged that the filth on the trays caused him to have stomach viruses, throw up, fever, and constipation and he had to go to sick call and seek medical attention three times. *See Stallworth v. Wilkins*, 802 F. App'x 435 (11th Cir. 2020); *see Thompson v. Sec'y, Fla. Dep't of Corr.,* 551 F. App'x 555, 557 n.3 (11th Cir. 2014) (per curiam) (unpublished) (observing the *de minimis* standard has been met by "an observable or diagnosable medical condition requiring treatment by a medical care professional" and concluding the plaintiff had "alleged enough to avoid dismissal at this stage").

On the other hand, the Eleventh Circuit also held that the prisoner failed to allege a physical injury required to seek compensatory and punitive damages under the PLRA, where he alleged that various prison officials denied him a meatless diet, cold drinking water, bed sheets, outdoor recreation, and clean laundry when he simply alleged that the foregoing "made him sick." *Stallworth v. Wilkins*, 802 F. App'x 435, n. 2 (11th Cir. 2020) (affirming dismissal where prisoner failed to describe the severity or kind of sickness he suffered from eating meat); *see also Brooks v. Warden*, 800 F.3d 1295 (11th Cir. 2015) (affirming dismissal of compensatory and punitive damages pursuant to § 1997e(e) where the inmate did not allege more than *de minimis* physical injuries arising from his hospital stay,

wherein inmate alleged he was placed in restraints, given medicine that gave him loose stools, and the guard's refusal to lower the restraints, forced him to defecate into his jumpsuit and lie in his own excrement for two days); *Merritt v. Stewart*, No. 3:13CV607/LAC/EMT, 2016 WL 1055247, at 5 (N.D. Fla. 2016), report and recommendation adopted, No. 3:13CV607/LAC/EMT, 2016 WL 1056584 (N.D. Fla. 2016); (prisoner "suffered no more than a *de minimis* physical injury **as a result of Defendants' conduct**, and accordingly his claims for compensatory or punitive damages are barred by § 1997e(e)") (emphasis added); *see also, Moore v. Bucher*, No. 405CV473-WS, 2006 WL 1451544, at 2 (N.D. Fla. 2006) (dismissing complaint where complaint has "a conclusory allegation of generic pain" and where inmate alleges "that he experienced 'severe physical pain and severe discomfort, and had to initiate medical treatment'"); *Hill v. Bryant*, No. 4:16-CV-309-WS-GRJ, 2017 WL 3585429, at 7 (N.D. Fla. 2017), *report and recommendation adopted,* No. 4:16CV309-WS/GRJ, 2017 WL 3581666 (N.D. Fla. 2017) (holding that under PLRA, inmate is precluded from bringing claims for punitive and compensatory damage where "Plaintiff did not suffer any physical injuries **as a result of Defendants' conduct**;" although Plaintiff says "he suffered from a fractured disc in his lower back as well as headaches…he has failed to show his back injury has anything to do with Defendants' conduct") (emphasis added).

8

The Eleventh Circuit also confirmed that because the prisoner did not request nominal damages, the claim was properly dismissed. *Stallworth*, 802 F. App'x. 435; *see Jolly v. Ellis-Bailey*, No. 3:19-CV-723-J-39JBT, 2019 WL 3068385, at 3 (M.D. Fla. 2019) ("Plaintiff does not include a request for 'other relief' or similarly inclusive language that could be liberally construed as a request for nominal damages"); *Mobley v. Gresco*, No. 5:11CV170/SPM/EMT, 2011 WL 3163159, at 3, n. 1 (N.D. Fla. July 1, 2011), *report and recommendation adopted,* No. 5:11CV170-SPM/EMT, 2011 WL 3162858 (N.D. Fla. 2011) ("Plaintiff's complaint cannot be liberally construed as requesting nominal damages, because he specifically requests only compensatory and punitive damages"); *see, e.g., Sears v. Rabion,* No. 03–13558, 97 Fed. Appx. 906 (11th Cir. 2004) (affirming district court's *sua sponte* dismissal of complaint under § 1997e(e), noting that plaintiff's complaint could not be liberally construed as requesting nominal damages, because he specifically requested compensatory and punitive damages).

Here, Plaintiff's alleged injuries, if any, as a result of Nurse Enfinger's conduct, do not constitute injuries that are more than *de minimis. See Mann*, 360 Fed. Appx. at 31 (vague back injuries and scrapes and marks on knees and legs amount to *de minimis* injuries); *Quinlan v. Pers. Transp. Servs. Co.*, 329 Fed. Appx. 246, 249 (11th Cir. 2009) (temporary chest pain, headache, and periodic episodes of back pain not more than *de minimis* injuries as they required no

immediate medical attention or evidenced physical injury beyond discomfort); *Dixon*, 225 Fed. Appx. at 799 (bruising from restraints is *de minimis* injury). "While the contours of the physical injury requirement under the PLRA is not subject to a precise definition, one court has aptly observed that 'a physical injury is an observable or diagnosable medical condition requiring treatment by a medical care professional. It is not a sore muscle, an aching back, a scratch, an abrasion, a bruise, etc., which lasts even up to two or three weeks.... Injuries treatable at home and with over-the-counter drugs, heating pads, rest, etc., do not fall within the parameters of 1997e(e).'" *Hill*, 2017 WL 358429 at 8 (quoting *Luong v. Hatt*, 979 F. Supp. 481, 486 (N.D. Tex. 1997).

The Amended Complaint clearly states that as a result of Nurse Enfinger's alleged conduct, for three days, he was in "excruciating pain" and experienced "psychological/emotional trauma," "personal humiliation," "anxiety," and "stress." DE 23 at 8. Based on Plaintiff's own allegations, he did not suffer any physical injuries as a result of Nurse Enfinger's alleged conduct.[1] Although Plaintiff alleged he broke his hip, Plaintiff failed to allege sufficient allegations to show his hip

---

[1] The gravamen of Plaintiff's Amended Complaint is the alleged three-day delay, wherein Plaintiff explicitly alleged that as a result of Nurse Enfinger's conduct, he suffered "excruciating pain" and "emotional trauma." Included in this time period are allegations that Plaintiff used crutches periodically. Although Plaintiff alleges that using crutches caused "nerve damage," absent from the complaint are allegations that such injury required immediate medical attention or evidenced physical injury beyond discomfort. Accordingly, such injury is insufficient under § 1997e(e).

injury had anything to do with Nurse Enfinger's conduct.  Accordingly, Plaintiff failed to allege a physical injury required to seek compensatory and punitive damages under the PLRA, § 1997e(e).  Because Plaintiff did not request nominal damages, his § 1983 claim again Nurse Enfinger should be dismissed.

## III.   **PLAINTIFF FAILED TO ALLEGE UNDERLYING CONSTITUTIONAL VIOLATION**

As a separate and independent basis for dismissal, Plaintiffs' § 1983 claim should be dismissed for failure to allege an underlying constitutional violation. In order to allege an Eighth Amendment constitutional violation stemming from the deprivation of medical attention, a prisoner must allege (1) an objectively serious medical need; (2) Defendants' deliberate indifference to that need; and (3) causation between that indifference and Plaintiff's "injury." *Farrow v. West*, 320 F.3d 1235, 1243 (11th Cir. 2003). Importantly, a plaintiff alleging an Eighth Amendment violation must also show that the injury was caused by defendant's wrongful conduct. *Goebert,* 510 F.3d at 1326.

A plaintiff has a "serious medical need" when the condition "is one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention." *Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1187 (11th Cir. 1994).

To show deliberate indifference to a serious medical need, a plaintiff must allege three components: (1) the defendant's subjective knowledge of the risk of serious harm; (2) the defendant's disregard of that risk; and (3) did so by conduct that is more than mere negligence. *Farrow v. West,* 320 F.3d 1235, 1245 (11th Cir. 2003); *Brown v. Johnson*, 387 F.3d 1344, 1351 (11th Cir. 2004); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999). "The official must both be *aware of facts* from which the inference could be drawn that a substantial risk of serious harm exists, and he must *also draw the inference*." *Farmer v. Brennan,* 511 U.S. 825, 837 (1994) (emphasis added). "An official acts with deliberate indifference when he or she *knows* that an inmate is in serious need of medical care, but he fails or refuses to obtain medical treatment for the inmate." *Lancaster v. Monroe County, Ala.,* 116 F.3d 1419, 1425 (11th Cir. 1997) (emphasis added); *Mandel v. Doe,* 888 F.2d 783, 788 (11th Cir. 1989) (noting that "knowledge of the need for medical care and intentional refusal to provide that care constitute deliberate indifference"). Here, Plaintiff failed to allege that Nurse Enfinger was subjectively aware that either Plaintiff's hip was broken or that there was a risk that serious harm would result from prescribing crutches, as opposed to a wheel chair; sending Plaintiff to his dorm as opposed to allowing him to stay overnight at the infirmary; and from delaying the X-rays of his hip until the following Monday morning. Indeed, Plaintiff failed to allege there was any long-term detrimental effect as a

result of Nurse Enfinger's alleged conduct or facts showing that such treatment or delay was unreasonable.

Not "every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 104–05 (1976). For medical treatment to rise to the level of a constitutional violation, the care must be "so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness." *Harris v. Thigpen,* 941 F.2d 1495, 1505 (11th Cir. 1991). "An accident, although it may produce added anguish, is not on that basis alone to be characterized as wanton infliction of unnecessary pain." *Estelle*, 429 U.S. at 104–05 (1976).

The Supreme Court has long established that "in the medical context, an inadvertent failure to provide medical care," or negligence "in diagnosing or treating a medical condition does not state a valid claim of medical mistreatment under the Eighth Amendment." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner"). A prisoner's § 1983 claim is subject to dismissal when it is "based solely on the lack of diagnosis and inadequate treatment" and where he "contends that more should have been done by way of diagnosis and treatment, and suggests a number of options that were not pursued." *Id*. "A prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious

medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment." *Id.* Questions such as "whether an X-ray or additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter of medical judgment. A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment. At most it is medical malpractice, and as such the proper forum is the state court…." *Id.*

Similarly, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference. *Hamm v. DeKalb County*, 774 F.2d 1567, 1575 (11th Cir. 1985); *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995). *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989) (quoting *Bowring v. Godwin*, 551 F.2d 44, 48 (4th Cir. 1977) ("'[W]e disavow any attempt to second-guess the propriety or adequacy of a particular course of treatment. Along with all other aspects of health care, this remains a question of sound professional judgment.'"); *Jackson v. Fair*, 846 F.2d 811, 817 (1st Cir. 1988) ("Although the Constitution does require that prisoners be provided with a certain minimum level of medical treatment, it does not guarantee to a prisoner the treatment of his choice.") To constitute deliberate indifference, the official's response must have been so inadequate as to "constitute unnecessary and wanton infliction of pain" and not "merely accidental inadequacy, negligence in

diagnosis or treatment, or even medical malpractice actionable under state law." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000). Where the inmate received medical attention and the dispute is over the adequacy of that attention, courts should be reluctant to question the accuracy or appropriateness of the medical judgments that were made. *Harris v. Thigpen*, 941 F.2d 1945, 1507 (11th Cir. 1991) (quoting *Waldrop v. Evans*, 871 F.2d 1030, 1035 (11th Cir. 1989)); *see also Woody v. Cronic*, 401 Fed. Appx. 509, 512 (11th Cir. 2010) ("Generally, an inmate who receives a medical diagnosis and care, but desires a different diagnosis or treatment, cannot show deliberate indifference"). A difference of opinion over matters of medical judgment does not give rise to a constitutional claim. *Harris*, 941 F.2d at 1505; *Waldrop*, 871 F.2d at 1033.

In *Cannon*, the Eleventh Circuit held that medical providers at prison did not act with deliberate indifference to a prisoner's serious medical needs by delaying an x-ray of his broken leg after a fall, and thus were not liable under § 1983 for an alleged violation of the prisoner's Eighth Amendment rights. *Cannon v. Corizon Med. Servs.,* 795 F. App'x 692 (11th Cir. 2019). In *Cannon*, on a Saturday morning, a prisoner fell in the shower; that same day, the prisoner alleged that despite the fact that his leg was turning black and blue and swelling, "no one offered any help other than Tylenol and to wrap his legs with bandages;" on Monday morning, the prisoner alleged he was taken for an x-ray which showed he

broke his leg; and that same afternoon, the prisoner was taken to the hospital and cleared for surgery. *Id.* The prisoner sued because he endured "extreme pain and suffering for two days before he was taken to the hospital" and brought deliberate indifference claims against the medical providers. *Id.*

In *Cannon*, the Eleventh Circuit concluded that, although the prisoner's leg was swollen and discolored after he fell, the plaintiff failed to allege a deliberate indifference claim where the allegations in the *pro se* prisoner's sworn complaint failed to show that (1) the providers "were subjectively aware either that [the prisoner's] leg was broken or that there was risk that serious harm would result from delaying the X-ray of his right leg until the following Monday morning, when a radiologist was available;" or (2) there was a long-term detrimental effect of a two-day delay in providing an x-ray; or (3) the delay in providing him with an X-ray was unreasonable. *Id; see Cannon v. Corizon Med. Servs.*, 795 F. App'x 692, 697 (11th Cir. 2019); *see Taylor v. Hughes*, 920 F.3d 729, 733 (11th Cir. 2019) ("The medical need must be one that, if left unattended, poses a substantial risk of serious harm").The Eleventh Circuit held that the prisoner's arguments that "in his opinion…more should have been done" to diagnose and treat his broken leg, such as conducting an X-ray of his leg on the day of his injury, "does not rise to the level of deliberate indifference. *Id.* ("a difference of opinion between the medical staff and a prisoner concerning the proper diagnosis or course of treatment is

16

usually insufficient to support a claim of deliberate indifference"). Here nothing compels a different result. Plaintiff failed to allege sufficient facts showing that Nurse Enfinger's subjective awareness of a risk of serious harm; showing his broken hip, when left "unattended" for three days, actually posed a substantial risk of serious harm; or that Nurse Enfinger's conduct was unreasonable under the circumstances.

In *Palermo*, the Southern District held that although the prisoner's back problems met the serious medical needs test, the doctor's failure to refer the prisoner to a spine specialist after an x-ray of his back was ordered "does not represent cruel and unusual punishment" and "is a clear example of a medical judgment made by a physician that *Estelle* held would not amount to deliberate indifference." *Palermo v. Corr. Med. Servs. Inc.,* 133 F. Supp. 2d 1348, 1361 (S.D. Fla. 2001).

In *Repp*, the Middle District held the plaintiff failed to state a claim against the nurse and she was due to be dismissed from the cases because "misdiagnosis was at best, mere negligence and at most, malpractice, and not grounds for establishing deliberate indifference." *Repp v. Kankam*, No. 2:15-CV-220-FTM-38CM, 2018 WL 4635666, at 3 (M.D. Fla. 2018) In *Repp*, the nurse examined the prisoner's eye but did not diagnose the prisoner as having a detached retina; two days later, the prisoner was diagnosed by the eye doctor as having a detached

retina. *Id.* The Middle District concluded the nurse's failure in not recognizing the eye issue was insufficient to state a deliberate indifference claim. *Id; see also Simmons v. Fla. Dep't of Corr.,* No. 5:14-CV-438-OC-39PRL, 2015 WL 3454274, at 12 (M.D. Fla. 2015) ("the misdiagnosis of ringworm before Plaintiff was transported to CCI does not rise to the level of deliberate indifference necessary to support an action under 42 U.S.C. § 1983, as a matter of law" and motion to dismiss is due to be granted); *Kruse v. Williams*, 592 F. App'x 848, 859 (11th Cir. 2014) ("While the nurse's diagnoses and quality of care may have been subpar, as Williams's may have been, they did not rise beyond a 'colorable claim of medical malpractice' to deliberate indifference"); *see also Barr v. Florida Dep't of Corr.,* No. 10–21890–CV, 2011 WL 1365552, at 4 (S.D. Fla. 2011) ("[A] misdiagnosis as Plaintiff has alleged does not rise to the level of deliberate indifference necessary for Plaintiff's 42 U.S.C. § 1983 claim").

In this case, Plaintiff failed to allege acts or omissions sufficiently harmful to evidence deliberate indifference on behalf of Nurse Enfinger. There are no allegations that Nurse Enfinger knew Plaintiff had a broken hip. At most Plaintiff alleges that Nurse Enfinger "had knowledge that [Plaintiff] had sustain [sic] damage from the fall in the shower" and she was aware that his hip was tender to her touch. DE 23 at 7. Absent from the complaint are any allegations that Nurse Enfinger actually drew the inference from her examination of Plaintiff that his hip

was broken. In fact, based on the allegations of the Amended Complaint, it was only on that following Monday, after the x-ray results, that medical personnel "discovered" Plaintiff's hip was broken. DE 23 at 7. Accordingly, the Amended Complaint fails to allege that Nurse Enfinger acted with the requisite deliberate indifference.

Moreover, even though Nurse Enfinger allegedly believed that Plaintiff was "faking it," as the "supervisor," she nevertheless examined Plaintiff and provided Plaintiff medical care. Nurse Enfinger still allowed Plaintiff to have ibuprofen for the pain; still issued Plaintiff a low bunk pass, a low tier pass, crutches, and an x-ray pass; still scheduled Plaintiff for an x-ray appointment; and, allowed Plaintiff to stay at the infirmary on Sunday. Absent from the Amended Complaint are any allegations that Nurse Enfinger was subjectively aware that there was a risk of serious harm that would result from having Plaintiff stay in his dorm instead of the infirmary; from prescribing crutches in lieu of a wheel chair; or from scheduling an x-ray appointment for the following Monday. Likewise, absent from the Amended Complaint are any allegations showing that the foregoing caused a long-term detrimental effect or that the foregoing was unreasonable under the circumstances.

Rather, at most, the Amended Complaint alleges Plaintiff's desire for a different diagnosis or treatment – this is not deliberate indifference. Here, it is indisputable that Plaintiff received medical attention. Rather, Plaintiff's contention

is over the adequacy of that attention. In this case, Plaintiff alleges that on Friday evening, Plaintiff slipped in the shower and landed on his hip. That same evening, Plaintiff was taken and evaluated by three different nurses in medical, including Nurse Enfinger. None of the nurses diagnosed Plaintiff as having a broken hip. Plaintiff was prescribed ibuprofen for the pain, a low bunk and low tier pass, and crutches. Plaintiff was also scheduled to have x-rays on the next regular business day. On Monday, only after his x-rays, it was discovered Plaintiff's hip was broken and he was transferred to the hospital. The surgeon determined that hip surgery was not medically necessary until two days later. Plaintiff then had his hip surgery on Wednesday, five days after his fall, without issue.

Plaintiff believes that when Nurse Enfinger evaluated him on Friday evening, he (1) should have been allowed to stay in the infirmary; (2) should have been given a wheel chair instead of crutches; and (3) should have been scheduled for an x-ray appointment earlier than Monday. The question of whether Nurse Enfinger should have employed additional treatment and diagnostic techniques, is a classic example of a matter for medical judgment and therefore not an appropriate basis for substantiating liability under the Eighth Amendment. The alleged care offered or allowed by Nurse Enfinger was not so grossly incompetent, inadequate, or excessive so as to shock the conscience or to be intolerable to fundamental fairness. Plaintiff alleges that because of Nurse Enfinger's conduct, he

was in "excruciating pain" and experienced "psychological" and "emotional trauma" for three days; Plaintiff does not allege any detrimental physical injuries occurred as a result of Nurse Enfinger's alleged conduct. The fact that Plaintiff disagrees with the treatment, i.e. a difference in medical opinion, is insufficient to state a deliberate indifference claim.

There are no allegations to show that the delay in getting an x-ray appointment was due to Nurse Enfinger's deliberate indifference; there is no allegation that Plaintiff's x-ray appointment needed to be scheduled earlier or could have been scheduled earlier or that an earlier appointment was even available, but Nurse Enfinger failed to give it to Plaintiff for non-medical purposes. There are no allegations that Nurse Enfinger, without the assistance of a doctor, could have prescribed medication stronger than ibuprofen. There are no allegations that a wheelchair, as opposed to crutches, was medically necessary for Plaintiff's personal use, but Nurse Enfinger purposely refused to prescribe Plaintiff a wheelchair because he was faking it. Thus, Plaintiff has failed to allege Nurse Enfinger was deliberately indifferent to Plaintiff's medical need.[2]

---

[2] *Arguendo*, even if the conduct alleged by Plaintiff states a deliberate indifference claim at the motion to dismiss stage (which Defendant expressly denies), because the alleged deliberate indifference only caused emotional injuries, Plaintiff's § 1983 claim cannot overcome the PLRA's physical injury requirement and is thus still subject to dismissal.

Accordingly, Plaintiff has failed to allege Nurse Enfinger's conduct rises to a constitutional violation. As such, Plaintiff's § 1983 claim against Nurse Enfinger fails and she should be dismissed from this action.

## IV.   NURSE ENFINGER IS ENTITLED TO QUALIFIED IMMUNITY FROM SUIT

Assuming, for purposes of this argument only, that Plaintiff alleged a constitutional deprivation, which the allegations preclude, Nurse Enfinger is still entitled to final summary judgment because Plaintiff is unable to meet his burden to establish that the alleged unconstitutional conduct under these facts violated a clearly established right. As such, Nurse Enfinger is entitled to qualified immunity.

To qualify for protection under qualified immunity, a public official must first prove she was acting within the scope of her discretionary authority. *Terrell*, 668 F.3d at 1250. Here, Nurse Enfinger was indisputably acting within her discretionary authority as a nurse, providing medical care to prisoners at Century Correctional Institution, on behalf of the Florida Department of Corrections at all relevant times. Once Enfinger's discretionary authority is established, the burden shifts to Plaintiff to show that qualified immunity does not apply by providing legal authority to establish the nurse's conduct violated a clearly established right. *Terrell*, 668 F.3d at 1250.

The purpose of qualified immunity is to allow government officials to carry out their discretionary duties without fear of personal liability or harassing

22

litigation. *Anderson v. Creighton*, 483 U.S. 635 (1987). Qualified immunity gives "meaning to the proposition that government officials are not required to err on the side of caution when it comes to avoiding constitutional violations." *Long*, 508 F.3d at 584. Qualified immunity protects all but the plainly incompetent or those who knowingly violate the law. *Malley v. Briggs*, 475 U.S. 335 (1986).

To demonstrate the law at the time was clearly established, Plaintiff must (1) point to earlier binding case law that is materially similar to the current case or (2) show the actions of an officer lie so obviously at the core of what the Eighth Amendment prohibits that the unlawfulness is readily apparent. *Slaton,* 584 F.3d at 576. The inquiry must focus on the *specific context* of the case. *Brosseau*, 543 U.S. at 198; *Mullenix v. Luna,* 575 U.S. ___ (2015). Thus, the specific question here is whether it was clearly established that the Eighth Amendment prohibited Nurse Enfinger's alleged medical treatment.

In this case, Plaintiff failed to allege that Nurse Enfinger was subjectively aware that Plaintiff's hip was broken; that Nurse Enfinger was subjectively aware that there was a risk that serious harm would result from prescribing crutches instead of a wheel chair, from Plaintiff staying in his dorm as opposed to the infirmary, and from delaying the X-ray of his hip until the following Monday; that there was indeed serious harm caused by Nurse Enfinger's alleged treatment and delay in medical care; or that such alleged medical treatment and delay was

unreasonable. Despite Plaintiff's attempt to create an innovative theory of deliberate indifference, Plaintiff's claim is essentially an alleged negligence claim, if that, disguised as a constitutional right violation. The essential "mistake" alleged is that more should have been done by way of medical treatment and diagnosis. The United States Constitution does not convert a simple negligence cause into one rising to the level of a constitutional deprivation. Accordingly, Plaintiff failed to allege a constitutional violation.

As more fully set forth herein, courts have found a nurse's care under circumstances much more gruesome than those Plaintiff alleged in this action, do not violate a prisoner's rights. Even if there was some question about Nurse Enfinger's conduct, there can be no question that there is no authority placing Nurse Enfinger on notice that the alleged conduct in this case was clearly unconstitutional. It also cannot be argued that Nurse Enfinger's alleged conduct was so obvious to every objectively reasonable nurse confronted with the circumstances Plaintiff alleged faced Nurse Enfinger. There is simply no authority establishing that Nurse Enfinger's alleged conduct violated Plaintiff's Eighth Amendment constitutional right to be free from cruel and unusual punishment under these circumstances. To the contrary, the Eleventh Circuit has approved medical providers' conduct in circumstances much more intense than those faced by Enfinger. As such, Nurse Enfinger is entitled to qualified immunity and should

be dismissed from this case with prejudice.

## CONCLUSION

WHEREFORE, Defendant Nurse Enfinger, in her individual capacity, is entitled to dismissal from Plaintiff's First Amended Complaint because Plaintiff has failed to state a claim upon which relief can be granted. Additionally, because Plaintiff cannot overcome Nurse Enfinger's entitlement to qualified immunity, she should be dismissed from this action with prejudice. Accordingly, Nurse Enfinger respectfully requests an order dismissing the Amended Complaint, dismissing Nurse Enfinger from this action with prejudice and awarding any other relief that is just and proper.

## CERTIFICATE OF WORD COUNT

I certify that this Memorandum complies with the word count limitation set forth in Local Rule 7.1(F) because this Memorandum contains 5,885 words, excluding the parts exempted by said Local Rule.

Respectfully submitted,

/s/ Kayla E. Platt Rady
LINDA BOND EDWARDS
Florida Bar No.: 0057282
E-mail: ledwards@rumberger.com
KAYLA E. PLATT RADY
Florida Bar No.: 0117896
E-mail: krady@rumberger.com
RUMBERGER, KIRK, & CALDWELL, P.A.
101 North Monroe Street, Suite 120

25

Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

Attorneys for Enfinger

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on May 18, 2020, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system.  I further certify that I mailed the foregoing document and the notice of electronic filing by first-class mail to the following non-CM/ECF participants:

Allen Dale Owens, 033593
North Florida RMC
PO Box 628
Lake Butler, FL 32054
**(Pro Se Plaintiff)**

/s/ Kayla E. Platt Rady
LINDA BOND EDWARDS
Florida Bar No.:  0057282
E-mail:  ledwards@rumberger.com
KAYLA E. PLATT RADY
Florida Bar No.:  0117896
E-mail:  krady@rumberger.com
RUMBERGER, KIRK, & CALDWELL, P.A.
101 North Monroe Street, Suite 120
Tallahassee, Florida 32301
Tel:  850.222.6550
Fax:  850.222.8783

Attorneys for Defendant Enfinger

13517377.v1